# C. B. Cox *et al.* v. State.

No. 249. Opinion Filed November 2, 1909.

(104 Pac. 1074.)

1. **INDICTMENT AND INFORMATION—Sufficiency—Caption.** (a) No indictment or information is insufficient by reason of a defect or imperfection in the matter of form which does not tend to prejudice the substantial rights of the defendant upon the merits.

  (b) While it is best for an information to have a caption, yet its absence or errors in it are not fatal to the information.

2. **APPEAL—Review—Briefs—Requisites and Sufficiency.** Upon appeal the brief must state the precise error complained of, and enough of the record to enable this court to understand the question presented, and also state the page of the record upon which matter complained of will be found, and must also clearly state the argument, and cite the authorities relied upon, or any supposed errors will be treated as waived, unless they are fundamental.

3. **EVIDENCE—Materiality—Judicial Notice—Beer Intoxicating.** (a) Objections should be sustained to all questions, the answers to which could not affect the matter at issue.

  (b) The court will take judicial knowledge of the fact that beer is intoxicating, and its sale is prohibited under our Constitution and statutes.

4. **PARTIES TO OFFENSES—Intoxicating Liquors—Persons Responsible—Agency—"Principals."** (a) The civil law of agency has no application to violations of criminal law.

  (b) All persons who are concerned in the commission of an offense are "principals," and should be prosecuted and convicted as such, and it is immaterial as to whether they are present when the crime is actually committed.

  (c) Where a person is the proprietor of a joint. and keeps beer and whisky there, and has a United States license to pursue the business of selling liquor, he cannot escape responsibility for a sale made by his barkeeper upon the ground that he was not present when the sale was made.

5. **INDICTMENT AND INFORMATION—Verification—Sufficiency.** (a) For a properly verified information for selling intoxicating liquors, see opinion.

(Syllabus by the Court.)

3 Cr.—9

*Appeal from District Court, Rogers County; Archibald Bonds, Judge.*

    C. B. Cox and others were convicted of an unlawful sale of intoxicating liquor, and they appeal. Affirmed.

*H. Tom Kight,* for appellants.

FURMAN, PRESIDING JUDGE. 1. In the motion for a new trial the sufficiency of the information is challenged. The information is as follows:

"In the District Court within and for Rogers County, State of Oklahoma, Second Judicial District. Before Hon.
T. L. Brown, Judge.

"State of Oklahoma, Plaintiff, v. Tom Smith and B. C. Cox and John Thurman, Defendants. Information.

"Be it remembered that Wm. M. Hall, county attorney in and for Rogers county, state of Oklahoma, who prosecutes in the name and by the authority of the state of Oklahoma, comes herein in person into the county court of said county this 1st day of February, 1908, and upon the affidavit of Wm. McClain, duly subscribed and sworn to by him as provided by law, and the same is hereto attached, marked 'Exhibit A,' and made a part hereof, gives the court to understand and be informed that on the 23d day of January, A. D. 1908, in Rogers county, state of Oklahoma, and one B. C. Cox, Tom Smith, and John Thurman, late of said county, and within the jurisdiction of this court then and there being, did then and there wilfully, unlawfully, sell one pint of intoxicating liquor to Dave Coker contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Oklahoma.          WM. M. HALL,
"County Attorney, Rogers County.

"State of Oklahoma. County of Rogers—ss.:

"Personally appeared before me, Archibald Bonds, judge of the county court within and for the county of Rogers, state of Oklahoma, W. M. Hall, of lawful age, who, being first duly sworn upon his oath, states that he is the county attorney of said county, that he has read the foregoing information and knows the contents thereof, and that the facts and allegations therein contained are true.          W. M. HALL.

"Subscribed and sworn to before me this 1st day of Feb., 1908.          ARCHIBALD BONDS,
"County Judge.

"State of Oklahoma, County of Rogers—

"I, W. M. McClain, after being first duly sworn, deposes and says that my name is W. M. McClain. I live in Claremore, Okla. I am 37 years of age. On last Friday a week ago, on or about January 23, 1908, I, in company with Dave Coker, went into the place of business of Smith and Cox on Third street in the town of Claremore, Okla., and I saw Dave Coker buy of John Thurman, an employee of Smith & Cox, one pint of what I took to be whisky, for which he paid him $1. We afterwards divided the contents of the bottle, and I took my half home as a medicine for my family. I told Coker that I wanted some good whisky, and we would go up to Cox's to get it, and I saw him pay John Thurman for the same, and saw Thurman give him the bottle. Dave Matthews was present at the time, and others whose names I do not now recall. The contents of the bottle I did not taste, but it looked like whisky and smelled like whisky, and I bought it for whisky, or rather had Dave Coker buy it for me for whisky. I gave Dave Coker a half dollar, and I saw Thurman take something and pass it along under the counter, and I saw Coker make the motion as if to pay for the same.     Wm. McClain.

"Subscribed and sworn to before me this 1st day of February, 1908.                                Lee Settle,

"Clerk of the District Court."

It is first claimed that the information upon its face discloses the fact that it was presented in the district court of Rogers county, before Hon. T. L. Brown, judge, and that the record does not show that it had ever been transferred to the county court. Counsel for the defendant rely upon the first paragraph of section 5357,, Wilson's Rev. & Ann. St. 1903, to sustain their contention, which is as follows:

"The indictment must contain: First. The title of the action, specifying the name of the court to which the indictment is presented, and the name of the parties."

The second section of section 5365, Wilson's Okla. St., is as follows:

"The indictment is sufficient if it can be understood therefrom: First. That it is entitled in a court having authority to receive it, though the name of the court is not stated."

Section 5366, Wilson's Okla. St., is as follows:

"No indictment is insufficient, nor can the trial judgment, or

other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

So we see that by the, express language of the statute the omission of any matter of form from an indictment, which does not tend to the prejudice of the substantial rights of a defendant upon the merits, does not affect the sufficiency of an indictment. It is best to have a correct caption to an indictment or information, but it does not add to or take from the charging part of the indictment or information. Its presence neither gives to the defendant any additional rights, nor does its absence impose any additional burdens upon him. If it appears that the indictment is filed in a court having jurisdiction of the offense charged, the purpose of the law has been accomplished. The caption of the information now before us is no part of the information itself. There is nothing except this caption to indicate that this information was ever filed in the district court of Rogers county. This was simply a clerical error on the part of the county attorney. The record shows that the information was filed and presented in the county court, which had jurisdiction of the offense charged. This was sufficient.

2. The second assignment of error is as follows:

"That the court erred in admitting testimony on the part of the defendant in error, as shown by the transcript filed herewith."

The brief does not present any questions asked or answer thereto under this assignment. It is the duty of counsel, when they bring a case to this court for review, to state in their brief the precise error complained of, and to correctly copy in the brief enough of the record to enable this court to understand the question presented. They should also give the page of the transcript upon which the matter complained of will be found. This court is too busy to undertake to hunt through haystacks for needles. The brief should also clearly present their arguments and cite the authorities relied upon. Not a single question asked by counsel for the state or answer thereto, is presented under this assign-

ment, and no motion is made of any exceptions to any such question or answer. No argument is made, and no authorities are cited. If any errors were committed by the court in the admission of evidence against the defendant, they are therefore waived.

3. The third assignment of error is as follows:

"The court erred in ruling out and excluding competent and legal evidence on the part of the plaintiff in error, as shown by the transcript filed herewith."

The brief complains of only one ruling of the court in exclusion of evidence. When the defendant was on the stand testifying in his own behalf, his counsel asked him the following question:

"You said some time last summer you took out wholesale license for selling a car load of Uno; state whether Uno is the same as this, except that they have different labels, and if the same people make it."

This question was objected to by the county attorney, and the objection was sustained and the defendant reserved an exception. In the brief for the defendant it is said:

"We submit that the court erred in refusing to admit this testimony for the reason that the defendant in error had gone into the question as to whether or not Uno and Rochester were intoxicating beverages, and it was proper for the defendant to rebut this testimony and show that Uno and Rochester were not intoxicating, and that they contained the same amount of alcohol, even though labeled with different labels."

The testimony in connection with which this question was asked is as follows:

"What is your name? B. C. Cox. One of the firm of Cox & Smith, are you? Yes. What business are you engaged in? Pool hall and cigar stand. Do you sell any kind of drinks up there? Yes, sir. What do you sell? Uno, soda water. Any Rochester? No, sir. Here are some wholesale liquor licenses; do you know anything about them? Yes, sir. When did you get them? When? About two months ago. Where did you buy your stuff from? J. B. Quigley. Kansas City? Yes, sir. State whether or not the stuff you bought from Quigley was intoxicating. (Objected. Sustained.) I will ask you to state whether or not you sought the advice of a certain lawyer or agent as to

whether this Uno was intoxicating? (Objected. Overruled.) State whether or not you sought the advice of a certain lawyer as to whether the car load of Uno bought through Quigley from Kansas City was intoxicating or not, and on which you acted, on their advice. Yes, sir. You say you got a license for that; what did you get it for? Did you get it on your own notion? (Objected.) How came you to get these licenses? They asked me to get them. Who did? The lawyer and Mr. Quigley. They were sent in mistake of the license; I ordered wholesale malt liquor and retail malt liquor licenses. Do you drink intoxicating drinks? Yes, sir. State whether or not you have drank any Rochester exhibited as such, and whether it is intoxicating or not. (Objected to. Overruled.) State whether or not, Mr. Cox, what I have in my hand is a part of the same as taken by the sheriff, Mr. Stephens, is intoxicating. (Objected to, as it shows it is a beer.) This drink is labeled Rochester, a mild beer, brewed and bottled by the Rochester Brewing Co., Kansas City, Mo. This stuff was taken from your building by the sheriff was it not? Yes, sir. And was indorsed by the sheriff as stuff taken from your building when arrested? Yes, sir. State whether or not the same is intoxicating or not. (Objected to. Overruled.) I don't think it was intoxicating; if so, I would not have sold it. State whether or not to drink in a reasonable quantity, a man would become intoxicated. No, sir."

It will be observed that the offense is alleged to have been committed prior to the passage of the enforcement act. The question presented must therefore be determined under the provisions of the Constitution. Section 9, Bunn's Const. Okla., among other things, provides:

"Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale, and wine, contrary to the provisions of this section, or who shall, within the above-described portions of the state, advertise for sale or solicit the purchase of any such liquors, or who shall ship or in any way convey such liquors from other parts of the state into the portions hereinbefore described, shall be punished, on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense."

This provision makes the sale of any kind of intoxicating liquors unlawful, and included beer, ale, and wine in the pro-

hibited liquors. It was as much an offense under this provision of the Constitution to sell beer, ale, and wine as it was to sell whisky or brandy. The defendant's own testimony establishes the fact that he had received a car load of beer about two months before the trial. The trial began on the 7th day of February, 1908. This was nearly three months after the incoming of statehood. So he had received this beer about three weeks after the Constitution went into effect, and before the date of the offense charged. The record shows that at the time of the alleged commission of this offense the defendant had at his place of business a United States internal revenue license to pursue the business of retail liquor dealer at Claremore, in Rogers county, and that he also had at his place of business a United States revenue license to pursue the business of wholesale dealer in malt liquors at Claremore. When the arrest was made in this case something like two barrels of beer and some whisky was found in his place of business. Under these facts and the provisions of the Constitution any answer which could have been made to the question asked would have been immaterial, and the court therefore did not err in sustaining the objection thereto.

4. Defendant further complains in his brief as follows:

"That the verdict was contrary to the law and evidence as shown by the record, for the reason that the evidence of the state did not show that this defendant B. C. Cox ever sold a pint of whisky to Dave Coker, nor does it show that John Thurman, who was acting as agent for B. C. Cox, ever sold a pint of whisky to Dave Coker, nor does the evidence show that there was a pint of whisky ever sold, and even if a pint of whisky had been obtained by Dave Coker in the pool hall of B. C. Cox, it does not show that John Thurman, in acting as agent for B. C. Cox, manifested the guilty intention of accepting the $1 alleged by Coker to be 'due the house' from him, but at the time Dave Coker paid John Thurman $1, Thurman asked Coker what it was for, and he said to him that he 'owed the house $1'; that at the time Thurman received and accepted this $1 he neither knew what it was for beyond a debt owing to the house, nor did he have any knowledge of Coker ever obtaining a bottle off the shelf in said house."

This calls for a review of the testimony. The record shows conclusively that the witnesses as to the sale of the whisky were exceedingly unwilling, and that they did all in their power to screen and protect the defendant, and were clearly biased in his favor. Far from weakening the effect of their testimony, this increased its force and weight. The testimony of the ready and anxious witness may well be questioned on account of his anxiety to remember something against a defendant, while, upon the other hand, a manifest attempt to forget and favor a defendant may cause a jury to attach great importance to admissions which may be drawn from him. The evidence discloses that the following facts were reluctantly drawn from the witnesses against the defendants: The defendant Cox was engaged in the business of running a pool hall and joint in Claremore, and the defendant Thurman was attending the bar for Cox, and the bar was furnished as such places usually are. Cox had a United States liquor license to pursue the retail liquor business. The windows of the room were frosted so that no one could see through them. There was a blind or screen concealing the bar from the door. About two barrels of beer and some whisky were found in the place when the arrest was made. About the date of the alleged offense Mr. McClain and Dave Coker went into the bar. McClain had given Coker money to purchase whisky. Coker went behind the bar and spoke to Thurman. Coker picked up a bottle of whisky inside the counter, and gave Thurman a dollar, and said: "I owe the house," and McClain and Coker went out and divided the whisky. On being asked if he did owe the house anything Coker said he did not know whether he did or not. It was evident that these witnesses were most reluctant, and did all in their power to protect the defendant. In the light of the facts in the case the jury were fully warranted in finding that there was a sale of the whisky by Thurman to Coker, and that the claim that Coker was simply paying the house a debt was a subterfuge for the purpose of concealing the sale. No intelligent and honest jury should allow themselves to be imposed upon by any such device as this. It is child's play for Cox to attempt to escape

responsibility for the act of Thurman in selling whisky to Coker. The frosted windows and screens before the bar, and the United States liquor license, and the general furnishings of the bar, and the fact that whisky and beer were found in the joint, conclusively proves the purpose for which it was kept. The facts were all admissible in evidence as a part of the *res gestae* of the offense to prove the character of the joint and the purpose for which it was being kept. Thurman was simply a barkeeper for Cox. The act of Thurman was the act of Cox, whether Cox was present or not when the sale was made, because the evidence shows that they were acting together in violating the law. No man can screen himself behind the civil law of agency in the commission of crime.

All persons who are concerned in the commission of an offense, whether they directly commit it or aid or abet in its commission, though not present when it is committed, are principals, and should be prosecuted and convicted as such. The evidence amply sustained the verdict, and the court did not err in overruling the motion for a new trial on this ground.

5. It is objected that the information is not properly verified. Upon an examination of the cases of *Flowers v. State,* 2 Okla. Cr. 430, 101 Pac. 860; *Salter v. State,* 2 Okla. Cr. 464, 102 Pac. 719, and *De Graff v. State,* 2 Okla. Cr. 519, 103 Pac. 538, it will be found that the verification is strictly in harmony with these cases.

6. One of the grounds relied upon for a new trial is that all of the instructions to the jury were not in writing. An examination of the record does not sustain this contention. If any oral instructions were given, that fact does not appear in the record, and no exceptions were reserved thereto.

The defendants were properly proceeded against by information, and were fairly tried. The evidence sustains the verdict. The judgment of conviction is therefore affirmed.

DOYLE and OWEN, JUDGES, concur.

ON PETITION FOR REHEARING.

No. 249.   Opinion Filed December· 7, 1909.

(105 Pac. 369.)

APPEAL—Petition for Rehearing—Requisites and Sufficiency.  A pe-
tition for a rehearing based upon the ground that a controlling
decision which was not called to the attention of the courts is
in conflict with the decision of which a rehearing is sought
must show that such conflict exists.

(Syllabus by the Court.)

On motion for rehearing.   Motion denied.

*Elliott & Howard,* for appellant.

PER CURIAM.  Rule 9 of this court (1 Okla. Cr. ix, 101 Pac.
ix) governs applications for a rehearing.   It is as follows:

"(1) Application for a rehearing in any cause, unless other-
wise ordered by the court, shall be made by a petition to the
court signed by counsel and filed with the clerk within fifteen
days from the date on which the opinion in the cause is filed.
Such petition shall briefly state the grounds upon which counsel
relies for a rehearing, and show either that some question decisive
of the case and duly submitted by the counsel has been overlooked
by the court, or that the decision is in conflict with an express
statute or controlling decision, to which the attention of the court
was not called, either in brief or oral argument, or which has
been overlooked by the court, and the question, statute, or decis-
ion so overlooked must be distinctly and particularly set forth in
the petition.   If such application is granted, the cause shall be
assigned for rehearing, and the clerk shall notify both parties
or their counsel of the time when such will be had, and such time
may be given for argument or brief as the court shall allow."

The petition for a rehearing is as follows:

"Comes now B. C. Cox, the appellant in the above-entitled
cause, and most respectfully shows the court:   That on the 2d
day of November, 1909, a decree and judgment was rendered by
this honorable court against this appellant, affirming a judgment
and sentence of the county court of Rogers county, Okla., wherein
the said county judge of Rogers county did on the 9th day of

March, 1908, duly sentence this appellant to 60 days' imprisonment in the county jail of Rogers county, and to pay a fine of $400 upon a charge of the unlawful sale of intoxicating liquors charged to have been sold on or about January 23, 1908, in Rogers county, Okla. (1) That said decision affirming the judgment and sentence of the county court of Rogers county against this appellant overlooked the decision of this honorable court in the case of *Titsworth v. State,* 2 Okla. Cr. 268, 101 Pac. 288, which said case is controlling in this case, and wherein this honorable court lays down the following rule: It is the present opinion of the writer that in cases against defendants for keeping intoxicating liquors for sale the general reputation of such places, in the community in which they are situated, touching this point, is admissible in evidence, just as it is permissible to prove a general reputation of a bawdyhouse, a gambling house, or of any place which constitutes a nuisance. Section 14, art. 3, of the enforcement act (page 608, c. 69, Sess. Laws 1907-08), expressly makes such places where liquors of any kind are sold, manufactured, bartered, or given away or otherwise disposed of in violation of the law nuisances. This, however, would not be true in cases in which the defendant was charged with a specific sale of such liquors. Such evidence would only be admissible where the defendant was charged with keeping liquors for sale at a certain place. (2) That the court in affirming said judgment and sentence against this appellant overlooked the rule as laid down by this honorable court in the case of *Sturgis v. State,* 2 Okla. Cr. 262, 102 Pac. 57, which case is almost identical with the case of appellant, and the decision of which case is controlling in this case, and the rule being laid by the court as follows: "The safe rule is to require some evidence of such acting together before such acts and declarations of others concerned in the commission of an offense are admitted in evidence when such acts were not committed or statements were not made in the presence of the defendant. Under these rules of law, the question now presents itself as to whether there is in the record any evidence that the defendant was concerned with the Holmes and McKinley in the sale of intoxicating liquor, except the testimony as to the statements of Holmes and McKinley to the witnesses who testified to such statements. * * * There is not one word of evidence in this record except hearsay which proves, or tends to prove, that the defendant was concerned with Holmes or McKinley in the sale of intoxicating liquors.' Page 66, 102 Pac.

(3) That the court in affirming said judgment and sentence against this appellant overlooked the rule laid down by this honorable court in the case of *State v. Mask,* 2 Okla. Cr. 283, 101 Pac. 293, where the court lays down this rule: 'Upon the trial for the offense of having possession of intoxicating liquors with the intention of violating the provisions of the prohibition law, where no positive testimony tending to show such possession was offered to show possesson purely circumstantial and did not show actual or constructive possession of such liquors as charged, held, that the evidence is insufficient to sustain the conviction.'     (4) That the court in affirming the judgment and sentence in the case against this appellant overlooked the rule as laid down by this court in the case of *Lightle v. State,* 2 Okla. Cr. 334, 101 Pac. 608, wherein the court lays down the following rule governing the introduction of evidence, which rule is controlling in this case; said rule being as follows: 'Before liquor can be offered in evidence for the inspection of the jury, such liquor must be identified as having been in the possession and having been unlawfully disposed of by the defendant.'     The appellant further states to the court that the above decision as well as many other cases decided by this honorable court relative to the violation of the prohibition provisions of the Constitution and laws of the state of Oklahoma have been handed down by the court since the brief of the appellant was filed with this honorable court, and the decisions therefore could not have been cited to the court in said brief.     Wherefore your petitioner, said appellant, prays the honorable court to grant a rehearing in said cause, and that said cause may be reheard by this honorable court.     Respectfully submitted.     Elliott & Howard, Attorneys for appellant."

While a number of the decisions of this court are quoted from in the petition for a rehearing, which it is claimed were overlooked by this court, yet it is not alleged in a single instance that there is any conflict between the quotations made and any portion of the decision of the court in this case.     In fact, no attempt is made to show any such conflict.     In failing to show or attempt to show such conflict the petition is not in compliance with rule 9, and is therefore clearly insufficient, and fails to present anything for the consideration of this court.

Rehearing denied.